UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO: 3:11-CV-573

**ANGELA ALBURY,** *et al.*                                                              **PLAINTIFFS**

v.

**DAYMAR COLLEGES GROUP, LLC,** *et al.*                                       **DEFENDANTS**

MEMORADUM OPINION AND ORDER

A telephonic conference was held on February 10, 2012.

This matter is before the Court on the Plaintiffs' Motion to Remand. Docket Number ("DN") 8. The Defendants have responded. DN 11. The Plaintiffs have replied. DN 12. Additionally, a telephonic conference of the parties was held on February 10, 2012. For the purposes of the present motion the parties have also agreed to rely on the supplemental briefs and jurisdictional discovery submitted in the companion cases of *Lancaster, et al. v. Daymar Colleges Group, LLC, et al.,* 3:11-CV-157-R, and *Wiggins, et al. v. Daymar Colleges Group, LLC, et al.*, 5:11-CV-36-R. The parties have further agreed that no additional jurisdictional discovery is required in this case. The motion to remand is now ripe for adjudication. For the following reasons the Plaintiffs' Motion to Remand is DENIED.

## BACKGROUND

The Plaintiffs seek to bring a class action on behalf of themselves and as representatives of a proposed plaintiff class, consisting of "current and prior attendees of the various Daymar Colleges in Kentucky, Indiana and Ohio (the 'Class')." Compl., DN 1-7, ¶ 1072. According to the Complaint, "[t]he Class is composed of present and former students of Daymar who have been fraudulently solicited to attend Daymar educational institutions with the promise of receiving Degrees transferrable to the vast majority of institutions of higher learning, and for whom these representations were both false and the Degrees and credits non-transferrable." *Id.* The Plaintiffs also seek to represent a class who secured loans to pay for degrees, who were

1

promised jobs in their field of study following graduation, and who were misled regarding the terms and availability of financial aid. *Id.* at ¶¶ 1073-1075. The Plaintiffs' claims are "based on violations of KRS Chapter 165A *et seq.*, the Kentucky Consumer Protection Act, Kentucky antitrust laws, and common law misrepresentation, fraud, fraudulent inducement, breach of contract, breach of implied contract, conspiracy, and injunctive and declaratory relief." Pl.'s Mot. Abeyance, DN 9, p. 1.

The Plaintiffs filed suit in Jefferson County on September 21, 2011, against Daymar Colleges Group, LLC, Daymar Learning of Paducah, Inc., Daymar Learning of Ohio, Inc., Mark A. Gabis, Daymar Learning, Inc., and The Daymar Foundation, Inc. The Defendants removed the case to this Court on October 14, 2011 on the basis of diversity jurisdiction under the Class Action Fairness Act. In response to removal, the Plaintiffs filed a motion to remand. Pls.' Mot. Remand, DN 8. The Court now considers the Plaintiffs' motion.

**STANDARD**

The Class Action Fairness Act ("CAFA") provides that "[t]he district court shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant . . . ." 28 U.S.C. § 1332(d)(2). Additionally, the proposed class must contain 100 or more individuals. 28 U.S.C. § 1332(d)(5)(B). The party asserting jurisdiction pursuant to CAFA - a defendant removing from state court in most circumstances - bears the burden of proving, by a preponderance of the evidence, that the statute's jurisdictional requirements have been met. *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404-05 (6th Cir. 2007) (citations omitted). If these requirements are met, the district court has jurisdiction to hear the case.

2

A district court's jurisdiction under CAFA is not without exception, however. CAFA prescribes three statutory circumstances in which a court can or must decline jurisdiction. Under the "home state" exception, a court is divested of jurisdiction if more than two-thirds of the members of the proposed class and the primary defendants are citizens of the state where the action was originally filed. 28 U.S.C. § 1332(d)(4)(B). Under the "local-controversy" exception, a court's jurisdiction is removed if two-thirds of the members of the proposed class are citizens of the state in which the action was originally filed; the plaintiffs seek significant relief from at least one defendant who is from the state where the action was originally filed and whose conduct forms a significant basis for the plaintiffs' claims; and the injuries resulting from the alleged conduct were incurred in the state in which the action was originally filed. 28 U.S.C. § 1332(d)(4)(A). Finally, a court is permitted, but is not required, to decline jurisdiction under the "discretionary" exception. 28 U.S.C. § 1332(d)(3). If more than one-third but less than two-thirds of the proposed plaintiffs' class and the primary defendants are citizens of the state in which the action was originally filed, the court may decline jurisdiction after examining the "totality of the circumstances" and several factors explicitly listed in the statute. *Id.* If a court is barred from exercising jurisdiction or declines to do so under any of the three CAFA exceptions, it must dismiss the action - if an original federal action - or remand to the state court from which it was removed.

A party seeking remand must show that one of the CAFA exceptions applies by a preponderance of the evidence. *See In Re Sprint Nextel Corp.*, 593 F.3d 669, 673 (7th Cir. 2010) (home state exception must be proven by preponderance of the evidence); *Preston v. Tenet Healthsystem Mem'l Med. Ctr. Inc.*, 485 F.3d 793, 797 (5th Cir. 2007) (local controversy exception must be proven by a preponderance of the evidence); *Serrano v. 180 Connect, Inc.*,

3

478 F.3d 1018, 1024 (9th Cir. 2007) ("[O]nce federal jurisdiction has been established under [§ 1332(d)(2)], the objecting party bears the burden of proof as to the applicability of any express statutory exception under §§ 1332(d)(4)(A) and (B)."); *Evans v. Walter Indus.*, 449 F.3d 1156, 1164 (11th Cir. 2006) ("[W]hen a party seeks to avail itself of an express statutory exception to federal jurisdiction granted under CAFA, as in this case, we hold that the party seeking remand bears the burden of proof with regard to that exception."). In sum, the party asserting jurisdiction under CAFA bears the burden of proof. Once jurisdiction is established, however, the burden shifts to the party opposing jurisdiction to prove that one of the CAFA exceptions applies.

## DISCUSSION

The Court must determine if this case is properly removed pursuant to the requirements set forth in the CAFA. In order for a case to be properly brought into federal court pursuant to the CAFA, the defendant seeking removal must establish: the amount in controversy exceeds five million dollars, exclusive of interests and costs; there is minimal diversity; and Plaintiffs' proposed class would exceed 100 individuals. *Kaufman v. Allstate N.J. Ins.*, 561 F.3d 144, 151 (3d Cir. 2009) (holding the "party seeking to remove to federal court [must] demonstrate federal jurisdiction."); 28 U.S.C. §1332(d)(2)–(5)(B). Plaintiffs do not dispute that the proposed class would exceed 100 individuals. Plaintiffs argue, however, that Defendants have not established that the amount in controversy exceeds five million dollars. Additionally, Plaintiffs argue that although there is minimal diversity, one of the CAFA exceptions applies and permits or requires remand to the state court.

    **I.**    **Amount in Controversy**

First, Plaintiffs argue that Defendants have failed to establish by a preponderance of the

4

evidence that the amount in controversy is greater than $5 million.  *See Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404 (6th Cir. 2007) ("CAFA does not alter the fact that 'the removing defendant has the burden of demonstrating, by a preponderance of the evidence, that the amount in controversy requirement has been met.'"); *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993) (where plaintiff seeks recovery of an unspecified amount of damages, burden is on defendant to prove the threshold jurisdictional amount by a preponderance of the evidence).

> [The preponderance of the evidence test] does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount in controversy requirement.  Such a burden might well require the defendant to research, state and prove the plaintiff's claim for damages.  On the other end of the spectrum, requiring the defendant to prove that the amount in controversy "may" meet the federal requirement would effectively force the plaintiff seeking remand to prove in rebuttal that only a relatively small amount of damages is legally possible.

*Gafford*, 997 F.2d at 159.  Plaintiff seeks an unspecified amount of damages in this case.  The Complaint notes only that Plaintiffs seek "an amount exceeding the jurisdictional requirements of this Court."  Compl., DN 1-7, ¶ 1107.  As this case was originally filed in Jefferson County Circuit Court, the applicable jurisdictional amount is $5,000.00.  *See* Ky. Rev. Stat. Ann. §§ 23A.010(1), 24A.120(1).

Defendants note that Plaintiffs have alleged there are thousands of putative class members.  *See* Compl., DN 1-7, ¶ 1076 ("Plaintiffs are informed and believe, and on that basis allege, that thousands of persons are members of the Class through numerous Daymar Colleges in Kentucky, Indiana, and Ohio.").  Additionally, Defendants point out that Plaintiffs are seeking compensatory damages for time lost, reimbursement of "all loan amounts,"[1] pain and suffering,

---

[1] The Defendants' response to the Motion to Remand notes that "[t]he average loan amount of a student attending Daymar exceeds $5,000 alone." Defs.' Resp., DN 11, p. 11.  This information does not appear to have been available to the Defendants at the time of removal.  The Court may consider, however, post-removal materials so

and lost income opportunities. *Id.* at ¶ 1105. Plaintiffs also seek punitive damages, injunctive relief, and attorneys' fees. *Id.* at p. 164 (prayer for relief). Thus, based upon the requested damages and the number of class members alleged in the Complaint, Defendants assert that "the aggregate amount Plaintiffs have placed in controversy is in excess of $5 million." Notice of Removal, DN 1, ¶ 43.

The Court finds that Defendants have proven the jurisdictional amount of $5 million by a preponderance of the evidence. Plaintiffs' Complaint indicates that the class will be composed of thousands of people. Thus, at the very least, Defendants can estimate the class size to be at least 2,000. In addition, Plaintiffs seek reimbursement of "all loan amounts." Defendants note that the average loan amount for a Daymar student is $5,000. Multiplying these numbers presents $10 million in damages alone. Plaintiffs claim this estimate is too high. Plaintiffs' Complaint, however, notes that Plaintiffs have become indebted "to the extent of thousands of dollars . . . ." In addition, many of the named Plaintiffs have acquired "significant educational debt." Even at $2,000 for 2,000 class members, the class would claim $4 million in damages for reimbursement of loan amounts. This figure must then be added to the additional damages Plaintiffs seek, including compensatory damages for time lost and lost income opportunities, pain and suffering, punitive damages, injunctive relief, and statutory attorneys' fees. The Court finds that this is more than enough to satisfy the jurisdictional amount. Accordingly, Defendants properly removed this action under the CAFA.

---

long as the information contained within those materials was relevant at the time of removal. *See, e.g.*, *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001) ("If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed."); *Harmon v. OKI Sys.*, 902 F. Supp. 176, 178 (S.D. Ind. 1995) ("[P]ost-removal admissions by parties opposing federal jurisdiction may be considered if they are probative of the amount in controversy at the time of removal.").

## II. The CAFA Exceptions

The Court has found that the Defendants properly removed to this Court under CAFA. The Plaintiffs now seek to remand this case to state court and assert two grounds for doing so. First, they claim that the Court is divested of jurisdiction by CAFA's "home state" exception found in 28 U.S.C. § 1332(d)(4)(B) because more than two-thirds of the members of the proposed class are citizens of Kentucky. In the alterative, the Plaintiffs would have the Court decline jurisdiction under the "discretionary" exception. The Court addresses each of these arguments in turn.

### A. The "Home State" Exception.

A federal district court is divested of jurisdiction under CAFA where two-thirds or more of the members of the proposed plaintiffs' class and the primary defendants are citizens of the state in which the action was originally filed. 28 U.S.C. § 1332(d)(4)(B). The parties agree that the primary defendants are citizens of Kentucky. The real issue in this case is whether two-thirds of the members of the proposed class are citizens of Kentucky. The Plaintiffs bear the burden of proving class citizenship by a preponderance of the evidence. *See In Re Sprint Nextel Corp.*, 593 F.3d at 673. The Plaintiffs contend that they have presented evidence showing that more than two-thirds of the members of the proposed class are citizens of Kentucky.

#### 1. *Standard for Citizenship.*

Before examining the Plaintiffs' evidence, the Court finds it necessary to discuss and review how courts determine citizenship for the purposes of the diversity statute, including CAFA. The citizenship of a natural person is equated with his or her domicile. *Certain Interested Underwriters at Lloyd's v. Layne*, 26 F.3d 39, 41 (6th Cir. 1994); *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990) ("State citizenship for the purpose of the diversity

requirement is equated with domicile."); *see* 15 *Moore's Federal Practice* § 102.34 (Matthew Bender 3d Ed. 2011) (in the context of diversity, "'citizenship' of a state and 'domicile' are synonymous terms"). "To acquire domicile within a particular state, a person must be physically present in the state and must have either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere." *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973); *see Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there."). Thus, a person's citizenship or domicile is composed of an objective and subjective component.

The objective component of citizenship is fulfilled by showing one's physical presence in a state. The subjective component of citizenship - the intent to remain in a particular state - is the more difficult inquiry. Although a person's place of residence is an indicia of his or her domicile, "'[d]omicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another." *Holyfield*, 490 U.S. at 48 (citations omitted). It has repeatedly been held that "[a] party's residence in a state alone does not establish domicile." *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 798 (5th Cir. 2007); *see, e.g., Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (noting that residency without intent to remain fails to establish domicile). Indeed, an individual's residence is but one of many factors courts examine when determining a person's domicile. *See Garcia Perez v. Santeaella*, 364 F.3d 348, 351 (1st Cir. 2004) (when determining domicile a court should consider factors like current residence, voting registration and voting practices, locations of personal and real property, place of employment, driver's licenses, and payments of taxes); *Stifel,* 477 at 1122 ("[I]ndicia of intent [to remain] include affidavits of intention . . . opening bank accounts, addressing tax returns,

motive for establishing domicile, and other physical facts evidencing [a] desire to remain . . . ."). An objective showing of a person's place of residence is insufficient to establish his or her domicile without evidence of subjective intent to remain in a particular state.

### 2. *The Plaintiffs' Evidence of the "Home State" Exception.*

At all times in this litigation the Plaintiffs have maintained that two-thirds of the members of the proposed class are citizens of Kentucky. In support of this position the Plaintiffs submitted evidence purporting to show that the Court is divested of jurisdiction under the "home state" exception. The Court now examines this evidence and concludes that it fails to demonstrate that two-thirds of the members of the proposed class are citizens of Kentucky. The evidence is insufficient because the Plaintiffs have wrongly assumed that they may prove the citizenship of the proposed class by establishing the residence of its members.

#### a. Evidence Submitted with the Motion to Remand.

The Plaintiffs' original motion to remand included a table of data purporting to show that 65.95% of students attending the Defendants' schools in Kentucky, Indiana, and Ohio during the 2009 school year were citizens of Kentucky. Pls.' Mot. to Remand, DN 8-1, p. 10-11. Through exhibits attached to their motion, the Plaintiffs submitted the data used to create the table. *See* DN 8-10; DN 8-11. The Court has examined this data and finds that the conclusions drawn from it are flawed for three reasons. First, and most troubling of all, the Plaintiffs claim that certain percentages in the table show the percentage of in-state *citizens* attending each campus in 2009. By way of example, the table shows that 77% of the students attending the Daymar campus in Louisville were citizens of Kentucky. The Plaintiffs draw this conclusion from reports of the National Center for Education Statistics (NCES). The NCES report for Daymar's Louisville campus lists the total number of students attending in the fall of 2009 and also provides a graph

9

of "undergraduate student *residence*." DN 8-11, p. 62 (emphasis added). This graph shows that 77% of Daymar's Louisville students were *residents* of Kentucky. As discussed above, *residence*, alone, does not equate to *citizenship*. *See Holyfield*, 490 U.S. at 48. Although the NCES reports may show what percentage of Daymar's Louisville students are objectively present in Kentucky, it does nothing to demonstrate their subjective intent to stay in the state. Therefore, the Plaintiffs' reliance on the NCES data is misplaced. The NCES data is not evidence that members of the proposed class are *citizens* of Kentucky.

Second, although the Plaintiffs present the percentages on the NCES forms as data from 2009, an examination of the forms shows that the in-state residency percentages are actually reported for 2008. Every NCES form states, just below the graph showing the percentage of "undergraduate student residence," that "Residence data are reported for first-time degree/certificate-seeking undergraduates, *Fall 2008*." DN 8-11, pp. 4, 11, 18, 25, 32, 39, 46, 54, 62, 70, 76 (emphasis added). The Plaintiffs attempt to determine the number of Kentucky citizens attending Daymar's campuses by multiplying the total number of Daymar students on each campus in *2009* by the percentage of "undergraduate student residence" for *2008*. This type of cross-year multiplication voids any measure of validity in the data. The Court can draw no conclusions about the citizenship of the class when total numbers from 2009 are multiplied by percentages from 2008.

Finally, the table in the Plaintiffs' motion to remand uses two different sources to establish the total number of students attending Daymar campuses in 2009. The total numbers of students attending Daymar's schools in Ohio, as well as the campus in Madisonville, Kentucky, are drawn from the NCES reports. DN 8-11, pp. 3, 10, 17, 24, 31. Although enrollment numbers for the other campuses are also available from the NCES reports, the Plaintiffs choose

10

to supplement the numbers for Daymar's Kentucky campuses with enrollment statistics from the Kentucky State Board for Proprietary Education (KYSBPE). DN 8-10. The Plaintiffs provide no explanation why the KYSBPE numbers should be substituted for the numbers provided by the NCES. An explanation is readily apparent, however. For unexplained reasons, the total number of Daymar students in the KYSBPE report is greater than the total number in the NCES reports. Multiplying the larger KYSBPE numbers by the NCES residency percentages naturally results in a greater number of Daymar attendees who are supposedly Kentucky citizens. The Plaintiffs provide no explanation why the Court should accept the greater total numbers provided by the KYSBPE while retaining the NCES numbers for Daymar's Ohio and Madisonville campuses.

Overall, the Court finds that the data submitted with the Plaintiffs' motion to remand is inconclusive and unreliable for determining the citizenship of the proposed class. The data confuses residence with citizenship, compares statistics from two different years, and includes data from two different sources without providing any justification for doing so. The Court's jurisdiction is not removed by this data.

### b. Supplemental Jurisdictional Discovery Submitted in the *Lancaster* and *Wiggins* Companion Cases.

In the companion cases of *Lancaster* and *Wiggins*, the Court found that the Defendants had properly removed to federal court but allowed the Plaintiffs to amend their complaint and conduct jurisdictional discovery in order to determine the citizenship of the proposed plaintiff class. Subsequent to completing discovery in those cases the Plaintiffs submitted a second supplemental reply in which they claim to have proven that more than 70% of the members of the proposed class are citizens of Kentucky. The parties have agreed that the Court should consider this evidence when ruling on the motion to remand in the present case.

Attached to their second supplemental replies in *Lancaster* and *Wiggins*, the Plaintiffs

included data derived from Integrated Post-Secondary Education Data Systems ("IPEDS")[1] reports, which contain multiple years of enrollment information across eleven Daymar campuses in Kentucky, Ohio, and Daymar's online program.[2] *Lancaster*, DN 44-6.  According to the Plaintiffs, the IPEDS reports contain citizenship statistics about all first-time Daymar enrollees. Although the proposed Plaintiffs' class includes *all* current and former Daymar students in Kentucky, Ohio, and Indiana, and not just first-time enrollees, the Plaintiffs claim that "there is no evidence to suggest the citizenship statistics [of non-first-time enrollees] would vary significantly from students included in the IPEDS reports."  *Lancaster*, Pls.' Second Supplemental Reply, DN 44, p. 7 n.19.  After examination, the Court finds that the report attached to the Plaintiffs' second supplemental reply suffers from the same primary deficiency as the data attached to the motion to remand.  The new report wrongly supposes that a person's state of residence is analogous to his or her state of citizenship.

      The Defendants filed a second supplemental reply in which they attack the Plaintiffs' reliance on the statistics derived from the IPEDS reports.  In particular, the Defendants included two noteworthy exhibits with their reply.  The first is a sample IPEDS report containing no data. *Lancaster*, DN 45-3.  The second is a completed IPEDS report for the Owensboro campus containing enrollment data for the fall of 2008.  *Lancaster*, DN 45-5.  Both of these documents contain a section in which the campus is required to report the "*Residence* of first-time undergraduate students."  *Lancaster*, DN 45-3, pp. 14-17 (emphasis added); *Lancaster*, DN 45-5, pp. 7-10 (emphasis added).  The Plaintiffs claim that the IPEDS reports demonstrate the

---

[1] The IPEDS reports contain data the Defendants submitted to the U.S. Department of Education.  The reports were produced through discovery in the related case of *Wiggins v. Daymar College Group, LLC*, 5:11-CV-00036-R.
[2] The aggregated data submitted by the Plaintiffs cover Daymar's campuses in Madisonville, Owensboro, Paducah, Bellevue, and Scottsville, Kentucky.  The data also cover Daymar's online program and the physical campuses at Lancaster, Jackson, Chillicothe, and New Boston Ohio.  The data available are varied, but generally cover different enrollment periods from 2005 to 2010.

*citizenship* of first-time enrollees, but this is simply not the case.  As with the previous evidence submitted in this case, the Plaintiffs have wrongfully equated residence with citizenship.  Because the IPEDS reports only show that 70% of first-time enrollees are *residents* of Kentucky, the Plaintiffs have failed to prove that two-thirds or more of the members of proposed class are *citizens* of Kentucky.  The "home state" exception is inapplicable because the Plaintiffs have failed to show that two-thirds or more of the members of the proposed class are citizens of Kentucky.

### 3. Other CAFA cases have refused to equate residency with citizenship.

The Court has determined that evidence regarding the citizenship of the proposed Plaintiffs' class is insufficient to trigger the "home state" exception.  Although the Plaintiffs have put forth evidence regarding the residence of the class members, residence alone is insufficient to establish citizenship.  This position is supported by numerous cases addressing the CAFA exceptions.

In *Sprint Nextel Corp.*, the plaintiffs sought to bring a class action in state court on "behalf of themselves and 'all Kansas residents' who purchased text messaging from Sprint Nextel . . . between January 2005 and October 2008[.]"  *In re Sprint Nextel Corp.*, 593 F.3d at 671.  The plaintiffs limited their class to "those who (1) had a Kansas cell phone number, (2) received their cell phone bill at a Kansas mailing address, and (3) paid a Kansas 'USF fee,' which is applied to all long-distance calls within Kansas."  *Id.*  The defendant removed the case to federal court under the provisions of CAFA, and the plaintiffs sought to remand under the "home state" exception.  *Id.*  The district court granted removal because "the class definition itself, keyed as it is to Kansas cell phone numbers and mailing addresses, made it more likely than not that two-thirds of the putative class members are Kansas citizens." *Id.* at 673.  Although

13

the Seventh Circuit Court of Appeals was "inclined to think that at least two-thirds of those who have Kansas cell phone numbers and use Kansas mailing addresses for their cell phone bills are probably Kansas citizens," the court reversed the decision to remand. *Id.* at 674. The court's assumption about the citizenship of the class was "[s]ensible guesswork based on a sense of how the world works, but guesswork nonetheless." *Id.* The court refused to remand and agreed "with the majority of district courts that a court may not draw conclusions about the citizenship of class members based on things like their phone numbers and mailing addresses." *Id.*

In *Preston v. Tenet Healthsystem*, the plaintiffs sought to bring a class action on behalf of patients who were injured or killed as a result of unreasonably dangerous conditions on the premises of the defendants' hospital in the wake of Hurricane Katrina. *Preston*, 485 F.3d at 795-96. The defendants removed from state court pursuant to CAFA, but the district court remanded, finding that "the best evidence that is available at this time indicates that more than two-thirds of the proposed class are citizens of Louisiana." *Id.* at 796. The plaintiffs used the pre-Katrina addresses of the hospitalized patients and their medical records as evidence of their citizenship. *Id.* at 798. The defendants even "confirmed that 200 of the 242 patients listed in [one plaintiff's] affidavit provided an Orleans Parish address as their primary residence." *Id.* In spite of this fact, the Fifth Circuit Court of Appeals reversed because "[the plaintiffs] presented no evidence . . . to demonstrate that these patients not only *resided* in Orleans Parish at the given addresses but also were *domiciled* in Louisiana at the time of Hurricane Katrina. A party's residence in a state alone does not establish domicile." *Id.* (emphasis original) (citation omitted). Domicile requires evidence of intention to remain in a place, and without "evidence of intent . . . the district court could not make the requisite credible estimate to remand . . . ." *Id.* at 801. "Without anything more than the patients [sic] primary billing addresses, the district court lacked grounds for

14

making a credible estimate that at least two-thirds of the patients and other proposed class members were citizens of Louisiana during the relevant time period." *Id.*

In *McMorris v. TJX Cos.*, the McMorris class sought to represent "[r]esidents of Massachusetts who made purchases and paid by credit or debit card or check or who made a return at one of more [of the defendant's stores] in the United States from 2002 to the end of 2006." *McMorris v. TJX Cos.*, 493 F. Supp. 2d 158, 161 (D. Mass 2007). The court refused to remand under the "home state" exception because the class definition was overly broad. Use of terms "residents" instead of "citizens" in the class made is so that the class might "include foreign citizens who resided in Massachusetts during that period and who made purchases at TJX." *Id.* at 162. Furthermore, the court rejected the plaintiffs' argument that "residence and citizenship are to be used interchangeably for the purposes of ascertaining diversity jurisdiction under CAFA." *Id.* Finally, it was insufficient for the plaintiffs to assert that all the named plaintiffs were citizens of Massachusetts and extrapolate that at least two-thirds of the class were also. *Id.* at 165-66.

In *Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506, 508-09 (E.D. Pa. 2007), the plaintiffs' class was defined as "[a]ll current and former employees of the U.S. Gauge facility who have been exposed to one or more of the Defendants' beryllium-containing products for a period of at least one (1) month while employed at the U.S. Gauge facility." The class was alleged to "consist of at least several thousand members," and the plaintiffs sought remand under the "home state" exception. *Id.* at 509. The court declined to remand because the composition of the class was speculative and "the citizenship of the entire class was never defined." *Id.* at 517. Most importantly, the class was composed of employees who worked at the facility during a 35-year period, and the plaintiffs provided no evidence that the thousands of members of the

proposed class "were ever, or have remained domiciled in Pennsylvania. Though this may be a reasonable inference, it does not satisfy the plaintiff's burden of proof." *Id.*

Finally, in *Nicholas v. Progressive Direct Ins. Co.*, Civil Action No. 06-146-DLB, 2007 U.S. Dist. LEXIS 29689, at *9-10 (E.D. Ky. March 31, 2007), the court denied a motion to remand under the "home state" exception. The court refused to remand because the class was proposed to cover five years and "to conclude that over this period at least two-thirds of these persons remained citizens of the state would be sheer speculation at this stage." *Id.* at *10.

All of these cases are instructive in the present case. In *Sprint Nextel* and *Preston*, the plaintiffs sought to establish the citizenship of the class by presenting the court with the mailing and billing addresses of its members. Both courts found that addresses alone, as evidence of residence, were insufficient to establish domicile. In the present case, the Plaintiffs claim to show citizenship by relying on evidence of residence as detailed above. This evidence is not sufficient and fails to establish domicile. In *McMorris*, remand was not warranted when the plaintiffs asserted a class on behalf of Massachusetts residents and claimed that all of the named plaintiffs were Massachusetts citizens. In the present case, even the named Plaintiffs fail to allege that they are *citizens* of Kentucky. The complaint, which identifies the 137 named plaintiffs, states that 73 of the named plaintiffs are *residents*, not citizens, of Kentucky. Compl., DN 1-1, ¶¶ 1-4, 7-10, 12-17, 19-20, 22-23, 25-27, 30-32, 34-35, 37-41, 43-44, 50-53, 55-56, 58, 60, 62-64, 66-92; DN 1-2, ¶¶ 135, 137. The other named plaintiffs are alleged to be *residents* of various other states, including: Ohio (DN 1-1, ¶¶ 5-6, 11, 24, 28-29, 33, 36, 45-49, 54, 57, 59, 61, 65, 93-94, 97-98, 101, 103-105, 107-108; DN 1-2, ¶¶ 110, 112-134, 136); Florida (DN 1-1, ¶¶ 18, 21, 106); Indiana (DN 1-1, ¶¶ 99, 102; DN 1-2, ¶¶ 109, 111); Illinois (DN 1-1, ¶¶ 42, 95); Tennessee (DN 1-1, ¶ 96); and North Carolina (DN 101, ¶ 100). There is no reference to their

*citizenship*. Furthermore, the proposed class is silent as to citizenship. It is asserted only on behalf of "current and prior attendees of the various Daymar Colleges in Kentucky, Indiana, and Ohio." Compl., DN 1-7, ¶ 1076. Finally, the scope and duration of the proposed classes in *Anthony* and *Nicholas* rendered the "home state" exception inapplicable. In *Anthony*, the class was comprised of employees who worked at a facility over a 35-year period, and in *Nicholas* it was composed of individuals who bought insurance during a 5-year span. In the present case, the evidence presented by the Plaintiffs spans approximately 5 years. In the words of *Nicholas*, "[t]o conclude that over this period at least two-thirds of these persons remained citizens of the state would be sheer speculation . . . ." *Nicholas*, 2007 U.S. Dist. LEXIS 28689, at *10. Overall, the Court holds that the Plaintiffs have failed to prove that two-thirds of the members of the proposed class are citizens of Kentucky. The "home state" exception will not divest the Court of jurisdiction.

### B. The "Discretionary" Exception.

In addition to the "home state" exception, the Plaintiffs ask this Court to decline jurisdiction under CAFA's "discretionary" exception. The "discretionary" exception allows a court, after considering a number of statutory factors, to decline jurisdiction if "greater than one-third but less than two-thirds of the members of all proposed plaintiffs classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed . . . ." 28 U.S.C. § 1332(d)(3). The Court need not spend much time analyzing whether it should decline jurisdiction under the "discretionary exception." This exception does not apply.

For the present case, the "discretionary" exception requires the Plaintiffs to show that more than one-third of the members of the proposed class are citizens of Kentucky. As demonstrated above, the Plaintiffs have only submitted evidence regarding the *residence* of the

17

members of the proposed class, not their citizenship.  As such, the Court cannot determine whether more than one-third of the members of the proposed class are citizens of Kentucky, a factor that must be present to trigger the discretionary analysis.  The Court holds that it will not decline jurisdiction under the "discretionary" exception because the Plaintiffs have failed to present evidence that more than one-third of the members of the proposed class are citizen of Kentucky.

## CONCLUSION

For the foregoing reasons the Plaintiffs' Motion to Remand (DN 8) is **DENIED**.

IT IS HEREBY ORDERED that a **telephonic conference of the parties** is set for **February 16, 2012, at 2:30pm EST**.  The Court shall initiate the call.

P/10

Thomas B. Russell, Senior Judge
United States District Court

February 14, 2012